UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY PERRI,

        Plaintiff,                   CIVIL ACTION NO. 16-cv-11696

    v.                                    DISTRICT JUDGE AVERN COHN

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Anthony Perri seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 12).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 10) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 12) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on December 7, 2013, alleging that he has been disabled since October 10, 2013, due to iliotibial band syndrome, patellofemoral arthritis, a popliteal cyst, a seizure disorder, fluid in both legs, celiac disease, and deep vein thrombosis (DVT). (TR 67, 104-10, 128.) The Social Security Administration denied Plaintiff's claims on March 3, 2014, and Plaintiff requested a *de novo* hearing. (TR 56-67, 74-75.) On May 18, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Gregory Holiday. (TR 29-55.) In a July 6, 2015 decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b) and was not entitled to benefits because he was capable of performing a his past relevant work as a jewelry sales clerk and a retail sales clerk as generally performed. (TR 14-24.) The Appeals Council declined to review the ALJ's decision (TR 1-5), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 10 at 4-11) and the ALJ (TR 17, 19-23, 24) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

**IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 10, 2013, and that Plaintiff suffered from the following severe impairments: degenerative joint disease of the right knee with meniscus tears, status post arthroscopic surgery on the right knee; left shoulder impingement syndrome and degenerative AC joint, status post arthroscopic surgery on left shoulder; and history of deep vein thrombosis. (TR 17.)  The ALJ also found that Plaintiff's history of epileptic seizure, gastroesophageal reflux disease, seborrheic keratosis, and left popliteal vein cysts were non-severe impairments.  (TR 17.)  Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 17-18.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:  cannot constantly operate foot controls; can only occasionally climb ladders, ramps, or stairs; no climbing ropes or scaffolds; no more than occasional balancing, stooping, kneeling, or crawling; can only briefly (up to 10% of the workday) crouch; cannot perform any overhead reaching and handling with the left upper extremity; and must avoid concentrated exposure to excessive vibration and to hazards like dangerous machinery and unprotected heights.

(TR 18-24.)  Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing his past relevant work as a jewelry sales clerk and a retail sales clerk as generally performed.  (TR 24.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from October 10, 2013, through the date of the decision.  (TR 14, 24.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

5

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because the ALJ "erred by determining a residual functional capacity for Mr. Perri that did not reflect all of his limitations, lacked sufficient explanation, and resulted from erroneous weighing of opinion evidence from a treating physician." (Docket no. 10 at 13.) Specifically, Plaintiff argues that (1) the ALJ's RFC assessment does not account for Plaintiff's peripheral arterial disease or history of DVT; (2) the ALJ minimized Plaintiff's limitations resulting from his cervical conditions; and (3) the ALJ rejected the opinion of Alan R. Warren, D.P.M., Plaintiff's treating podiatrist, without sufficient explanation. (*Id.* at 17-18.)

#### 1. The ALJ's Assessment of Plaintiff's RFC

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5

(July 2, 1996). It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ derives the RFC after considering the medical and other relevant evidence in the record. *Id*. He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis. *Id.* "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record. However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

Plaintiff argues that the ALJ's RFC assessment fails to account for his peripheral arterial disease and his DVT. (Docket no. 10 at 17 (citing TR 677).) He argues that the RFC assessment should have reflected limitations from these conditions because Dr. Warren's records indicate that Plaintiff had continuing problems with his lower extremities, and because the ALJ categorized his DVT as a severe impairment. (*Id*.) As further discussed below, however, the ALJ properly discounted Dr. Warren's opinion. Also, the ALJ discussed Plaintiff's DVT in his assessment of Plaintiff's RFC, specifically noting that objective medical tests performed in April and July of 2014 were negative for DVT. (TR 20.) The ALJ also referred to the opinion of Dr. Peter Rodin, DO, Plaintiff's treating physician, who opined that Plaintiff's leg swelling was most likely venous insufficiency and recommended the use of compression stockings. (TR 20.)

Moreover, as Defendant points out, the "mere existence [of peripheral arterial disease and DVT] does not mean that they affected Plaintiff's ability to work," particularly where Plaintiff's peripheral arterial disease was categorized as mild, and Plaintiff's DVT ceased to exist with anticoagulants before the alleged onset date.  (*See* docket no. 12 at 8 (citing *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 779 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)) ("[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."), TR 677, TR 811, and TR 835-38).)  *See also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other.").  Furthermore, Plaintiff does not indicate what additional functional limitations the ALJ should have assessed to accommodate for Plaintiff's peripheral arterial disease and DVT.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential evaluation process); *see also, Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  Plaintiff's Motion should therefore be denied in this regard.

Plaintiff also argues that "the ALJ minimized [his] limitations regarding his cervical conditions."  (Docket no. 10 at 17.)  Specifically, Plaintiff argues that the ALJ failed to mention the fact that Plaintiff underwent magnetic resonance imaging (MRI) of his cervical spine in March of 2015 or the results of that MRI, which indicated that Plaintiff has "[m]oderate right foraminal stenoses at the C4-5 and C5-6 levels with encroachment on the exiting right C5 and C6 nerve roots" as well as other degenerative changes.  (*Id.*; TR 725-28.)  Plaintiff also argues that the ALJ failed to include cervical disc disease as one of Plaintiff's severe impairments at step

two of the sequential evaluation process, even though Dr. Giancarlo diagnosed Plaintiff with the same following the MRI. (*Id.*) Plaintiff acknowledges that an ALJ is not required to discuss every piece of record evidence in his decision or categorize every impairment as severe at step two of the sequential evaluation process. (*Id.*) Plaintiff argues, however, that the March 2015 MRI is a significant piece of objective medical evidence in this matter, and the ALJ's failure to mention it discredits the ALJ's RFC assessment. (*Id.*)

As Plaintiff correctly points out, there is no requirement that the ALJ discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted). Thus, the ALJ's failure to specifically discuss Plaintiff's MRI does not mean that he failed to consider it. But even if the ALJ did entirely fail to consider Plaintiff's MRI, Defendant is correct that Plaintiff has failed to explain how the MRI results justify a more restrictive RFC. (*See* docket no. 12 at 11-12.) For example, Plaintiff alleged disability based on iliotibial band syndrome, patellofemoral arthritis, a popliteal cyst, a seizure disorder, fluid in both legs, celiac disease, and DVT (*see* TR 128); he has mentioned nothing about neck pain. And while Dr. Giancarlo did diagnose Plaintiff with cervical disc disease shortly after reviewing the MRI results (TR 732), he also noted that Plaintiff had normal range of motion in his neck (TR 731), and he assessed no functional limitations to Plaintiff as a result of the cervical disc disease. Notably, in April 2015, one month after the MRI and the cervical disc disease diagnosis, Dr. Giancarlo indicated that Plaintiff had no restrictions. (TR 717.) Moreover, Plaintiff does not provide any insight into what additional limitations he may suffer from based upon his cervical disc disease or the MRI results. *See Jones, Her, supra.* At most, Plaintiff leaves the ALJ and the court to speculate with regard to any possible limitations related

9

to his cervical spine. For these reasons, the ALJ's assessment of Plaintiff's RFC should not be disturbed.

## 2. *The ALJ"s Assessment of Dr. Warren's Opinion*

Plaintiff argues that the ALJ rejected the opinion of Plaintiff's treating podiatrist, Dr. Warren, without sufficient explanation. (Docket no. 10 at 18.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*

*of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ discussed Dr. Warren's opinion as follows:

> On April 8, 2014, Dr. Warren, the treating podiatrist, limited the claimant to no sitting, standing, or walking for more than 1 hour, no lifting over 10 pounds, and no bending, stooping, squatting, kneeling, or keeping head in a fixed position. Additionally, Dr. Warren limited the claimant to no handling, fine manipulation, or reaching with the left upper extremity (Exhibit 10F). However, this assessment is given little weight because it is inconsistent with the record as a whole. Additionally, Dr. Warren is a podiatrist and is not qualified to assess the claimant's limitations regarding his left upper extremity.

(TR 22.)

Plaintiff argues that the ALJ's reasoning for discounting Dr. Warren's opinion, that it is "inconsistent with the record as a whole," is vague, conclusory and insufficient to constitute a "good reason" in accordance with the treating physician rule. (Docket no. 10 at 18.) Plaintiff also argues that by discounting Dr. Warren's opinion regarding Plaintiff's upper extremity, the ALJ essentially conceded that Dr. Warren was able to opine regarding Plaintiff's lower extremities, which actually supports that particular portion of Dr. Warren's opinion. (*Id.*) Plaintiff claims that the ALJ's assessment of Dr. Warren's opinion is therefore vague and illogical. (*Id.*)

The undersigned agrees with Plaintiff that the ALJ, by noting Dr. Warren's specialization in podiatry and therefore finding him to be unqualified to assess limitations regarding Plaintiff's upper extremities, impliedly found Dr. Warren qualified to render an opinion regarding Plaintiff's lower extremities. Nevertheless, the ALJ discounted Dr. Warren's opinion regarding Plaintiff's lower extremities (that Plaintiff is unable to sit, stand, or walk for more than an hour and that he cannot bend, stoop, squat, or kneel) on the basis that it is "inconsistent with the record as a whole." (TR 22.) While this statement, standing alone, may in some circumstances be insufficient to meet the requirements of the treating physician rule under *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-77 (6th Cir. 2013) (explaining that the ALJ's reasoning "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"), it is not insufficient in this case.

Here, throughout his decision, the ALJ identifies and discusses the record evidence that is inconsistent with Dr. Warren's opinion regarding Plaintiff's lower extremities. For example, the ALJ noted that within two months of Plaintiff's October 2013 knee surgery, Plaintiff's physical

therapist and treating orthopedic surgeon indicated that Plaintiff was doing well and experiencing only mild pain, and the field office representative found that Plaintiff had no difficulty sitting, standing or walking. (TR 19-20.) The ALJ further noted that despite suffering from some leg swelling and knee pain in 2014, Plaintiff consistently exhibited good strength, intact sensation, normal gait, and no muscle atrophy in the lower extremities. (TR 20.) The ALJ therefore concluded that the objective medical evidence did not support the allegations regarding Plaintiff's difficulty with prolonged standing, sitting or walking. (TR 20.)

The ALJ also identified and discussed in his decision the record evidence that he found to be inconsistent with Dr. Warren's opinion regarding Plaintiff's upper extremities. In this regard, the ALJ acknowledged that Plaintiff underwent arthroscopic surgery on his left shoulder in March of 2014. (TR 21.) The ALJ then pointed out that in May of 2014, Plaintiff's physical therapist noted that Plaintiff's functional goals were met; that Plaintiff had improved his ability to open a jar, write, and perform all of his activities of daily living; and that Plaintiff characterized his worst pain as a 2 out of 10. (TR 21.) The ALJ also discussed Plaintiff's subsequent monthly appointments with his treating orthopedic surgeon at which Plaintiff, for the most part, exhibited mild pain, good range of motion, full strength, and intact sensation in his upper extremities. (TR 21.) The ALJ further acknowledged that Plaintiff experienced some setbacks with regard to his left shoulder and arm pain in late 2014 and early 2015, but that by April 2015, Dr. Giancarlo indicated that Plaintiff had no shoulder pain and no restrictions. (TR 22.) The ALJ concluded that Plaintiff therefore required some limitations regarding repetitive use of his left upper extremity, but he was not unable to perform fine or gross manipulation. (TR 23.)

The ALJ further explained that his RFC assessment was supported by the objective medical evidence as well as the opinions of Plaintiff's treating physicians, the state-agency physician, and Plaintiff's activities of daily living, none of which, the ALJ added, indicated that Plaintiff had any limitations in standing, sitting, or walking.  (TR 23.)  The discussion above demonstrates that the ALJ supported his reasoning for discounting Dr. Warren's opinion as "inconsistent with the record as a whole" with citations to the evidence of record and a discussion that is sufficiently specific to clarify the reasons for that weight. The ALJ therefore provided good reasons for discounting Dr. Warren's opinion in accordance with the treating physician rule, and Plaintiff's Motion should be denied with regard to this issue.

Lastly, Plaintiff argues that the harmfulness of the above-cited errors is apparent from the testimony of the VE, who opined that an individual would not be able to perform Plaintiff's past relevant work if, in addition to the limitations listed in the RFC assessment, he needed an opportunity to alternate between standing and sitting once every hour and he would be off task about ten percent of the workday.  (Docket no. 10 at 18 (citing TR 52).)  But Plaintiff does not point to any medical opinion that has assessed both of these additional limitations or to any medical evidence that would otherwise support them.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted).  Accordingly, Plaintiff's argument fails.

## VI.     CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 10) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 12).

## **REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 18, 2017  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  July 18, 2017         <u>s/Leanne Hosking</u>
                                         Case Manager